MARIE DEONIER & ASSOCIATES,

Plaintiff and Appellant,

v.

THE PAUL REVERE LIFE INSURANCE COMPANY,

Defendant, Respondent, and Cross-Appellant.

No. 99-115.

Submitted and Argued January 20, 2000

Decided August 31, 2000

INSURANCE

1. INSURANCE, The company's assertion that it had no reason to inform its agents of its intention to assert a

particular defense because it had no reason to believe that its policy interpretation might involve its agents in

litigation, is without merit. Because the issue was still an issue of first impression in Montana, never having

been decided by the Supreme Court, the company cannot rely on the decision in another case to support its

position that as a matter of uncontroverted fact and law, it had no knowledge of risk to its agents.

2. INSURANCE, Whether the company breached its duty to inform the agent of the risk of litigation from the

policy she sold on its behalf, involves issues of material fact. Therefore, the district court erred when it granted

the company's motion for summary judgment and dismissed the agent's claim for breach of fiduciary duty.

3. INSURANCE, The incontestability clause bars insurers from denying coverage for a disability, whether or

not the causative sickness first manifested itself before the policy's date of issue.

4. INSURANCE, The company admitted in its pleadings that there was no basis in law or fact for the negligent

misrepresentation claim against the agent. This was an implicit concession that the agent's liability arose solely

because of the agency relationship between them, a situation in which indemnity is required. Therefore, the

district court did not err when it entered judgment against the company requiring indemnification of the agent

for the expenses of defending the insured's action against her.

In the original proceeding, an insured brought action against her agent and insurance company to recover

disability insurance benefits and other damages after her claim was denied. The agent asserted cross-claims

against the company for indemnity and breach of fiduciary duties. The insured eventually settled with the

insurance company and dismissed her claims against it and the agent leaving the cross-claims by the agent to

be adjudicated. The breach of fiduciary duty claim was dismissed by summary judgment and following a bench

trial, judgment was entered for the agent on the indemnity claim. The agent appealed the dismissal and the

company cross-appealed the indemnity judgment. The Supreme Court, Justice Trieweiler, held that: (1) the

district court erred in dismissing the breach of fiduciary duties claim; and (2) the agent was entitled to

indemnification of her expenses of defending against the insured's claim.

Reversed.

Appeal from the District Court of Yellowstone County.

Thirteenth Judicial District.

Honorable Maurice Colberg, Jr., Judge.

For Appellant: Donald L. Harris (argued), L. B. Cozzens (argued), Colette Baumgardner-Davies, Crowley,

Haughey, Hanson, Toole & Dietrich, P.L.L.P., Billings.

For Respondent: James L. Jones and Robert L. Sterup (argued), Dorsey & Whitney LLP, Billings.

For Amicus: L. Randall Bishop (argued), Jarussi & Bishop, Billings (Montana Trial Lawyers Association).

JUSTICE TRIEWEILER delivered the opinion of the Court.

¶1 The original Plaintiff, Kathryn Vestal, brought this action in the District Court for the Thirteenth Judicial

District in Yellowstone County to recover disability insurance benefits and other damages from Defendants,

The Paul Revere Life Insurance Company and Marie Deonier & Associates, Vestal's insurance agent, as a

result of Paul Revere's denial of Vestal's disability claim. Deonier asserted cross-claims against Paul Revere for

indemnity and breach of fiduciary duties. Vestal subsequently settled with Paul Revere and dismissed her

claims against Paul Revere and Deonier. The parties were then realigned–Deonier as the Plaintiff and Paul

Revere as the Defendant. The District Court dismissed Deonier's claim for breach of fiduciary duty by summary

judgment. Following a nonjury trial on Deonier's claim for indemnity, the District Court entered judgment

against Paul Revere. Deonier appeals the District Court's summary judgment and Paul Revere cross-appeals the

District Court's judgment in favor of Deonier. We reverse the judgment of the District Court in part and affirm in

part.

¶2 The following issues are presented on appeal by Deonier:

¶3 1. Did the District Court err when it dismissed Deonier's claim for breach of fiduciary duty by summary

judgment?

¶4 2. Did the District Court err when it refused to decide the legality of Paul Revere's disability policy?

¶5 The following issue is presented on cross-appeal by Paul Revere:

¶6 3. Did the District Court err when it required Paul Revere to indemnify Deonier?

FACTUAL BACKGROUND

¶7 The Plaintiff, Marie Deonier, was a licensed disability and life insurance agent. In 1986, Paul Revere

appointed Deonier as one of its independent agents and expressly authorized Deonier to solicit applications,

deliver policies, collect premiums, and service Paul Revere's clients. Deonier did not have an exclusive

relationship with any disability insurance carrier, nor was Paul Revere the primary company for which Deonier

sold insurance policies.

¶8 The original Plaintiff, Kathryn Vestal, enrolled in the University of Montana School of Law in 1988. On

May 24, 1989, Vestal sought medical help from the University of Montana Student Health Services for insomnia

that she was experiencing. Vestal was prescribed low dose antidepressants over the next several months.

¶9 In 1990, Vestal accepted employment as a staff attorney in the Billings Office of Hearings and Appeals of

the Social Security Administration. Vestal met with Deonier in June 1991 to discuss Vestal's desire to purchase

a disability insurance policy. Because of Vestal's special needs as a federal employee, Deonier recommended a

Paul Revere policy. Deonier completed the insurance application based on information provided by Vestal. The

insurance application expressly disclosed the fact that Vestal had suffered insomnia for a period of time during

law school.

¶10 On June 27, 1991, Paul Revere issued Vestal a disability insurance policy which did not exclude any

preexisting conditions. Vestal's policy contained the following provisions pertinent to this case:

9.2 INCONTESTABLE

a. After your policy has been in force for two years, excluding any time You are Disabled, We cannot contest

the statements in the application.

b. No claim for Disability beginning after two years from the Date of Issue will be reduced or denied because a

disease or physical condition that existed before the Date of Issue unless it is excluded by name or specific

description.

## 3.2 PRE-EXISTING CONDITION LIMITATIONS

We will not pay benefits for a Pre-Existing Condition if it was not disclosed on Your application. You are

responsible for verifying the accuracy of each and every statement on Your application. Also, We will not pay

benefits for any loss We have excluded by name or specific description.

DEFINITIONS

"Sickness" means sickness or disease which first manifests itself after the Date of Issue and while Your Policy

is in force.

"Pre-existing Condition" means a Sickness or physical condition for which, prior to the Date of Issue:

a. Symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care, or treatment; or

b. Medical advice or treatment was recommended by or received from a Physician.

¶11 In 1975, the Fifth Circuit Court of Appeals decided Massachusetts Casualty Insurance Company v.

Forman (5th Cir. 1975), 516 F.2d 425. In Massachusetts Casualty Insurance Company, the insurance company

asserted a legal defense to the incontestable clause in its policy based on its definition of "sickness" which

excluded disabilities that manifested themselves prior to the issue date of the policy. This legal position is

presently known as the "Forman defense."

¶12 In 1981, a Montana Federal District Court decided the case of Doettl v. Colonial Life & Accident

Insurance Company (D. Mont. 1981), 505 F. Supp. 127. The Doettl case discussed an insured's reliance on an

incontestible clause, citing Massachusetts Casualty Insurance Company, 516 F.2d 425, and stating that "[t]he

almost universal rule is that incontestible clauses do not abrogate defenses going to coverage." Doettl, 505 F.

Supp. at 128.

¶13 In 1987, counsel for Paul Revere presented a paper to the Association of Life Insurance Counsel entitled:

"The Forman Defense in Disability Insurance." The paper outlined Paul Revere's position as follows:

The Forman defense permits a company to deny beyond the two-year contestable period, a disability claim for

a disease which had clearly manifested itself prior to the policy date, on the ground that it is not a covered

sickness under the policy. It is available in approximately 40 states and can be asserted in the remaining states

with the right set of facts or by filing for declaratory relief and continuing to pay the claim. However, in many of

these states, there is no clear authority pro or con and the company will be making new and hopefully favorable

law. Accordingly, it is imperative that corporate counsel review carefully each claim where the Forman defense

would be involved and select only those which have "clean" facts for the company and amply demonstrate the

insured's duplicity.

Id. at 779.

¶14 Based on the Montana Federal District Court's decision in Doettl, 505 F. Supp. 127, Montana was listed

as a state with favorable authority in support of the Forman defense. Paul Revere Life Insurance Co., The Forman Defense in Disability Insurance at 777. However, Paul Revere did not inform any of its insurance agents of its intention to assert the Forman defense in Montana. Following the Doettl decision in 1981, no Montana state or federal court has discussed the application of the Forman defense in Montana.

¶15 On February 18, 1992, Vestal was admitted to the emergency room at Billings Deaconess Hospital for treatment of depression and suicidal tendencies. In September 1993, Vestal was diagnosed with major depression and was unable to work. On November 9, 1993, Vestal submitted an application for social security disability benefits. Vestal was awarded social security benefits following her appeal to an administrative law judge.

¶16 On November 29, 1993, Vestal filed a disability claim with Paul Revere. Paul Revere initially paid disability benefits, but after obtaining Vestal's University of Montana health services medical records, Paul Revere denied Vestal's claim. In a letter to Vestal dated June 16, 1994, Paul Revere stated:

A review of your records indicated that you received treatment from February 4, 1989 to May 16, 1989 at the University of Montana Student Health Center. These records also indicate that you received treatment for depression and that you were treated with low doses of anti-depressants ....

In reviewing your application for insurance which was signed on June 27, 1991, we find no indication of any treatment for depression. Paul Revere had no prior knowledge of your depression.

Your policy defines sickness as a sickness or disease which first manifests itself after the date of issue and

while your policy is in force. Since your condition manifested itself prior to the issuance of this coverage, it

would not be a covered sickness under your contract. Therefore, we are unable to consider any further benefits

with regard to this claim.

¶17 On August 28, 1995, Vestal filed a complaint against Paul Revere and Deonier. Vestal alleged that Paul

Revere breached the disability insurance contract and acted in bad faith, and that both Paul Revere and Deonier

negligently misrepresented the policy provisions to Vestal. On October 30, 1995, Deonier filed an answer and

cross-claim against Paul Revere which alleged that Paul Revere breached its duty to indemnify Deonier.

¶18 On February 6, 1998, Deonier filed an amended answer and cross-claim against Paul Revere. The amended

cross-claim further alleged that Paul Revere breached its fiduciary duties to Deonier, and in doing so, Paul

Revere acted with actual malice and committed actual fraud, entitling Deonier to punitive damages.

¶19 On April 23, 1998, Vestal's claims were dismissed pursuant to a settlement agreement reached between

the parties. The District Court realigned the remaining parties–Deonier as the Plaintiff and Paul Revere as the

Defendant. On May 8, 1998, Paul Revere filed a motion for summary judgment. Paul Revere's motion requested

that the District Court dismiss Deonier's claim for breach of fiduciary duty, and grant partial summary

judgment

on Deonier's claim for indemnity. On June 17, 1998, the District Court entered its order and memorandum

granting Paul Revere's motion for summary judgment on Deonier's claim for breach of fiduciary duty. On July 1,

1998, the District Court entered its order denying Paul Revere's motion for partial summary judgment on

Deonier's claim for indemnity.

¶20 A nonjury trial on Deonier's claim for indemnity was held on July 6 and 7, 1998. On November 24, 1998,

the District Court entered its findings of fact and conclusions of law. The District Court concluded that Paul

Revere owed Deonier indemnity for attorney fees expended by Deonier in defense of Vestal's claims against

her.

STANDARD OF REVIEW

¶21 We review a district court's summary judgment to determine whether it was correctly decided pursuant to

Rule 56, M.R.Civ.P., which provides that summary judgment is only appropriate where there is no genuine issue

of material fact, and the moving party is entitled to judgment as a matter of law. See Motarie v. Northern

Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156.

¶22 The standard of review of a district court's conclusions of law is whether the court's interpretation of the

law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. We

review a district court's findings of fact to determine whether those findings are clearly erroneous. Daines v.

Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906.

DISCUSSION

ISSUE 1

¶23 Did the District Court err when it dismissed Deonier's claim for breach of fiduciary duty by summary

judgment?

¶24 Deonier asserts that the District Court erred when it granted Paul Revere's motion for summary judgment.

Deonier contends that, although the District Court correctly determined that Paul Revere owed Deonier a

fiduciary duty pursuant to the Restatement (Second) of Agency § 435, the District Court erred when it

concluded that Paul Revere did not breach this duty. Deonier asserts that there was a significant amount of

evidence presented that Paul Revere planned to assert the Forman defense in Montana and, therefore, Paul

Revere's failure to inform Deonier of its intention to invoke the Forman defense was a clear breach of Paul

Revere's duty to inform Deonier, its agent, of a risk of pecuniary loss from potential lawsuits.

¶25 In response, Paul Revere asserts that the District Court was correct in its determination that Paul Revere

did not breach its duty by failing to inform Deonier of its intention to assert a legal defense. Moreover, Paul

Revere contends that, pursuant to Doettl, in which a Montana Federal District Court endorsed the Forman

defense, Paul Revere had no reason to believe that its policy interpretation might be in violation of Montana

law and, therefore, it did not violate its duty to inform its agents of risk of pecuniary loss.

¶26 In its Order and Memorandum granting Paul Revere's motion for summary judgment, the District Court

concluded:

The duty claimed by Deonier to have been breached by Revere is the duty provided by Restatement (Second)

of Agency § 435 which provides, in applicable part "A principal contracts to use care to inform the agent of

risks of ... pecuniary loss which, as the principal has reason to know, exist in the performance of authorized acts

and which he has reason to know are unknown to the agent."

Clearly such a duty would be owed to Deonier as the agent of Revere.

There is no genuine issue of material fact concerning a breach of duty in this case. Revere was entitled to assert

an arguable legal position concerning the policy written here. It would be an impossible duty to contend that

insurance companies are required to inform agents in advance, prior to the time that arguments are even known,

that certain legal positions may be asserted concerning various clauses in a policy that is written. That certainly

is not a fact unknown to the agent which should be disclosed by the principal within the concept of

Restatement (Second) of Agency § 435.

... Revere had an arguable position that it was entitled to assert in defending the claim of Vestal. Without

deciding how the Montana Supreme Court would rule on the interpretation of the policy today, it is apparent

that under a number of cases which are cited by Revere in its brief it was entitled to assert that a manifestation

of disease or sickness prior to the time the policy was purchased by Vestal precluded her recovery as not being

within the definition of the policy as to disease or sickness despite the fact that the two year contestability time

had lapsed. Case law from Montana and other jurisdictions supported such argument. The language in Doettl

v. Colonial Life & Accident Insurance Company, 505 F. Supp. 127, 128 (D.Mont. 1981) stating "[t]he almost

universal rule is that incontestable clauses do not abrogate defenses going to coverage" ... at least allowed

Revere to make the argument in this case.

¶27 The District Court's analysis appears to apply the terms of § 33-18-242(5), MCA, which provides a

defense to an Unfair Trade Practices Act or bad faith action against an insurance company. That statute

provides that "[a]n insurer may not be held liable under this section if the insurer had a reasonable basis in law

or in fact for contesting the claim or the amount of the claim, whichever is in issue." The District Court

concluded that Paul Revere was entitled to assert the Forman defense because several jurisdictions, including

a Montana federal district court, had issued opinions which accept that defense. Accordingly, the District

Court concluded that there was no requirement that Paul Revere inform Deonier in advance that a Forman

defense may be asserted and, therefore, there was no genuine issue of material fact concerning a breach of Paul

Revere's duty to Deonier.

¶28 The District Court's apparent application of § 33-18-242(5), MCA, is misplaced. The proper analysis is

simply whether or not Paul Revere breached the following duty, as set forth in the Restatement (Second) of

Agency § 435 (1958):

Unless otherwise agreed, it is inferred that a principal contracts to use care to inform the agent of risks of

physical harm or pecuniary loss which, as the principal has reason to know, exist in the performance of

authorized acts and which he has reason to know are unknown to the agent. His duty to give other information

depends upon the agreement between them.

¶29 Comment (a) to Restatement (Second) of Agency § 435 (1958) states:

The duty may require not only warning the agent against physical dangers, as when the principal directs an

agent to go to a place which is dangerous, but also disclosing facts which, if unknown, would be likely to

subject the agent to pecuniary loss. Thus, a principal employing a factor to sell goods which appear to be but

are not sound is subject to liability to the agent if the agent is led to incur personal liability to a buyer through

mistaken statements concerning the condition of the goods.

¶30 Black's Law Dictionary defines "risk" as a "chance of injury, damage or loss." Black's Law Dictionary

1328 (7th Ed. 1999). Accordingly, the analysis the District Court should have applied is whether Paul Revere had

knowledge that it might assert the Forman defense in order to deny coverage on a policy sold by Deonier; and,

if so, that there was a risk Deonier would incur pecuniary loss, such as attorney fees, as a result of her

unknowingly false or misleading statements concerning coverage provided by the policy.

¶31 The District Court stated that "[i]t would be an impossible duty to contend that insurance companies are

required to inform agents in advance, prior to the time that arguments are even known, that certain legal

positions may be asserted ...." While we agree with the District Court that a principal has no duty to inform its

agent of unknown future legal positions we disagree with the District Court's conclusion that potential

consequences of the Forman defense were unknown.

¶32 Paul Revere's corporate counsel's paper, presented and published in 1987, illustrates the company's

level of awareness of the Forman defense and its consequences. The paper states as follows:

The Forman defense permits a company to deny beyond the two-year contestable period, a disability claim for

a disease which had clearly manifested itself prior to the policy date, on the ground that it is not a covered

sickness under the policy. It is available in approximately 40 states and can be asserted in the remaining states

with the right set of facts by filing for declaratory relief and continuing to pay the claim. However, in many of

these states, there is no clear authority pro or con and the company will be making new and hopefully favorable

law. Accordingly, it is imperative that corporate counsel review carefully each claim where the Forman defense

would be involved and select only those which have "clean" facts for the company and amply demonstrate the

insured's duplicity. The industry cannot afford another White case in an important state like New York.

....

The Forman defense, as applied to individual disability insurance, is relatively new and untested in many

states. Based upon a broad reading of cases, including individual life and health, group life and health, and

even some property and casualty cases, this writer projects the following breakdown as to how individual

states might view the Forman defense. Local counsel, however, must be retained as early as possible to

research the law of the local jurisdiction and will undoubtedly find precedents not generally available to this

writer or to corporate counsel which could affect the advisability or method of proceeding with the defense.

Moreover, one newly issued opinion can change a state's position, and the recent insertion of widely different

pre-existing condition exclusions into disability policies may lead to very different results.

1. States with favorable authority: Alabama, Florida, Georgia, Illinois, Montana, North Carolina, Ohio.

....

... Assuming after a careful analysis of the facts and law, it is decided to assert the Forman defense to a

disability claim, what next? There are a number of steps which should be considered.

....

... At the same time the company should consider whether, after it has notified the insured and ceased making

further claim payments, it should sit back to see what the insured will do, or file suit for back benefits

MARIE DEONIER & ASSOCIATES,

and a

determination that it has no liability for future benefits for this particular disability of the insured.... Corporate

counsel must weigh the costs and risks of litigation, especially involving the Forman defense.

¶33 The disability policy at issue in this case was issued to Vestal in 1991. The paper written by Paul

Revere's corporate counsel was published in 1987 and clearly contemplates a future application of the Forman

defense in Montana. Accordingly, we disagree with Paul Revere's assertion and the District Court's conclusion

that there was no genuine issue of material fact concerning a breach of duty in this case.

¶34 [1] Moreover, Paul Revere's assertion that, based on the decision in Doettl, it had no reason to inform its

agents of its intention to assert the Forman defense because it had no reason to believe that its policy

interpretation might involve its agents in litigation, is without merit. The federal district court's decision in

Doettl, while it applies some Montana law, is not binding on this Court. Moreover, the portion of the decision

that discusses the Forman defense contains no citations to Montana authority and, instead, relies on a New

York Court of Appeals' decision for the principle that the "almost universal rule is that incontestible clauses do

not abrogate defenses going to coverage."

¶35 Because the issue was still an issue of first impression in Montana, never having been decided by this

Court, Paul Revere cannot rely on the decision in Doettl to support its position that as a matter of

uncontroverted fact and law, it had no knowledge of risk to its agents.

¶36 [2] For these reasons, we conclude that whether Paul Revere breached its duty to inform Deonier of the

risk of litigation from the policy she sold on its behalf, involves issues of material fact. Therefore, we further

conclude that the District Court erred when it granted Paul Revere's motion for summary judgment and

dismissed Deonier's claim for breach of fiduciary duty. Accordingly, we reverse the District Court's award of

summary judgment in favor of Paul Revere.

ISSUE 2

¶37 Did the District Court err when it refused to decide the issue of the legality of Paul Revere's disability

policy?

¶38 Deonier contends that the District Court erred when it refused to construe Paul Revere's disability policy

on the grounds that doing so would be to render an advisory opinion. Deonier claims that the issue of whether

Paul Revere asserted the Forman defense to deny Vestal's claim, in violation of Montana law, is an essential

element of Deonier's punitive damage claim against Paul Revere. Deonier argues that, as part of its plan to

implement the Forman defense, Paul Revere fraudulently and maliciously invoked the policy definition of

sickness to circumvent the preexisting condition and incontestability provisions of its own policy, thereby

nullifying the incontestability provisions mandated by Montana law.

MARIE DEONIER & ASSOCIATES,

¶39 The District Court stated, and Paul Revere argues, as follows:

It has been requested by Deonier that the Court rule that the interpretation of this particular policy asserted by

Revere is improper as a matter of law. Such a determination is not necessary. Revere was entitled to make its

legal argument. Any opinion concerning the interpretation of the policy would be an advisory opinion which

would be inappropriate for the Court to make.

By reason of this ruling as to Count II which is the only tort claim of Deonier, she is necessarily precluded from

claiming punitive damages or damages for emotional distress.

¶40 Because we have reversed the District Court's award of summary judgment in Paul Revere's favor on

Count II, Deonier's tort claim regarding breach of fiduciary duty, Deonier is no longer precluded from claiming

punitive damages. Moreover, because the question of whether Paul Revere's definition of "Sickness" conflicts

with the statutorily required incontestability clause is a question of law on which Deonier's claim for punitive

damages rests, we conclude that reaching this issue does not constitute an inappropriate advisory opinion.

¶41 Section 33-22-202, MCA, provides:

Required provisions–captions–omissions–substitutions–order. (1) Except as provided in subsection (2), each

policy delivered or issued for delivery to any person in this state must contain the provisions specified in

33-22-204 through 33-22-215, as those provisions appear ....

¶42 Section 33-22-205, MCA, provides:

Time limit on certain defenses. (1) There shall be a provision as follows:

Time Limit on Certain Defenses:

(1) After 2 years from the date of issue of this policy no misstatements, except fraudulent misstatements, made

by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss

incurred or disability (as defined in the policy) commencing after the expiration of such 2-year period.

(2) No claim for loss incurred or disability (as defined in the policy) commencing after 2 years from the date of

issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded

from coverage by name or specific description effective on the date of loss had existed prior to the effective

date of coverage of this policy.

....

(3) A policy which the insured has the right to continue in force subject to its terms by the timely payment of

premium until at least age 50 or, in the case of a policy issued after age 44, for at least 5 years from its date of

issue, may contain in lieu of policy provision (1) of subsection (1) the following provision (from which the

clause in parentheses may be omitted at the insurer's option) under the caption "Incontestable":

After this policy has been in force for a period of 2 years during the lifetime of the insured (excluding any

period during which the insured is disabled), it shall become incontestable as to the statements contained in the

application.

¶43 As noted previously, Paul Revere's policy contained the language in § 33-22-205(1), MCA, which

provided that "no claim for Disability beginning after two years from the Date of Issue will be reduced or denied

because a disease or physical condition existed before the Date of Issue unless it is excluded by name or

specific description." Paul Revere's policy then limited the definition of "Sickness" in their policy to that

"which first manifests itself after the Date of Issue and while Your Policy is in force."

¶44 Based on its definition of "Sickness," Paul Revere contends that its policy does not apply to a sickness

which manifests itself prior to the date of the policy, and that the requisite language in the incontestability

clause does not create such coverage.

¶45 In Wellcome v. Home Insurance Co. (1993), 257 Mont. 354, 356-57, 849 P.2d 190, 192, we set forth the

following principles of insurance policy interpretation:

The interpretation of an insurance contract is a question of law in Montana. Well-established principles guide

our interpretation. The language of the policy governs if it is clear and explicit. Ambiguities are construed

against the insurer. Furthermore, exclusions from coverage will be narrowly and strictly construed because they

are contrary to the fundamental protective purpose of an insurance policy.

(Citations omitted.) However, the statutory incontestability clause must necessarily invoke different rules of

construction. Because the language is required by statute, the interpretation of that language must be

construed to effect the intent of the legislature, not the intent of the parties. See § 1-2-102, MCA.

¶46 Furthermore, based on the language in § 33-22-203(3) and (4), MCA, the incontestability clause for

disability policies mandated by the legislature takes precedence over other language in the policy. Pursuant to

§ 33-22-203(3), MCA, policy provisions not required by law, such as definitional provisions, may not "make a

policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the

provisions thereof which are subject to this chapter." Moreover, pursuant to § 33-22-203(4), MCA, "[w]hen any

provision in a policy subject to ... this chapter is in conflict with any provision ...of this chapter, the rights,

duties, and obligations of the insurer, the insured, and the beneficiary shall be governed by the provisions ... of

this chapter."

¶47 We have not previously addressed this issue. However, in a recent case, Galanty v. Paul Revere Life

Insurance Company (Cal. 2000), 1 P.3d 658, the Supreme Court of California addressed and analyzed the exact

issue and arguments before this Court. It is important to note that the two forms of incontestability clauses set

forth in the California Insurance Code § 10350.2, are the exact clauses set forth in the Montana Code at §

33-22-205, and patterned after Section 3(A)(2) of the Uniform Accident and Sickness Policy Provisions Law,

promulgated by the National Association of Insurance Commissioners (NAIC) in 1950. In Galanty, the

California Supreme Court stated:

Explanatory comments prepared by the NAIC described this aspect of the model law as "introducing a new

principle in accident and sickness insurance by guarantying to the insured that, after the policy has been in

force for [two years], ... no claim will be denied on the basis of misstatements in the application or on the

contention that any infirmity existed prior to the date of issue of the policy." (NAIC, Explanatory Comments on

the Uniform Individual Accident and Sickness Policy Provisions Law Adopted in June 1950, p. 3). The NAIC

also described the provision as effecting "the surrender by the insurer, after [two] years, of the right to base a

defense upon a misstatement in the application or upon prior origin of any condition."

... This background illuminates the parties' arguments. Paul Revere contends it has no obligation, despite the

incontestability clause, to pay benefits for Galanty's disability because the causative sickness first manifested

itself, in the form of a positive HIV test, before the policy was issued. Paul Revere thus seeks to harmonize the

policy provisions defining the scope of coverage with the incontestability clause. Galanty, in opposition,

argues that Paul Revere may not deny a claim for disability benefits, no matter when the causative sickness first

existed, so long as he did not become disabled until more than two years after the policy's date of issue.

Galanty would, thus, find a conflict between the coverage provisions and the incontestability clause, and

resolve the conflict by giving priority to the latter.

Paul Revere begins its argument by assuming that incontestability clauses do not affect coverage and that the

Legislature, in adopting section 10350.2, shared that assumption. That an incontestability clause does not

affect coverage is, as we have seen, the prevailing interpretation of the standard clause contained in many life

insurance policies. The assumption is consistent, Paul Revere notes, with the general principle that an insurer

has a right to limit the policy coverage in plain and understandable language, and is at liberty to limit the

character and extent of the risk it undertakes to assume. If we accept these premises, we must construe the

incontestability clause to be consistent with the clauses defining coverage.... This argument was first

articulated, and accepted, in Massachusetts Casualty Ins. Co. v. Forman, supra, 516 F.2d 425, 428-430. Most of

the courts that have decided the present issue in the insurer's favor have relied on Forman.

Paul Revere's argument has serious flaws, beginning with the assumption on which it depends. In the present

context, the assumption that an incontestability clause cannot affect coverage is erroneous. The assumption,

as noted, finds its origin in Chief Judge Cardozo's explanation that an incontestability clause "is not a mandate

as to coverage, a definition of the hazards to be borne by the insurer. The clause means only this, that within

the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception,

or thereafter became invalid by reason of a condition broken." (Metropolitan Life Ins. Co. v. Conway,

supra,

169 N.E. at p. 642.) This explanation makes perfect sense in its original context: a conflict between an

incontestability clause in a life insurance policy, providing simply that the policy "shall be incontestable" after

two years, and a provision excluding coverage for a specific hazard, namely, travel by aircraft. But the

proposition that no incontestability clause, regardless of wording, can ever affect coverage has no logical

force in the present context of a statutorily required clause that expressly bars the insurer, after two years,

from denying coverage "because a sickness or physical condition not excluded by name or specific

description before the date of loss had existed before the Date of Issue."

Galanty, 1 P.3d at 383-84 (citations omitted) (emphasis added).

¶48 Paul Revere's definitional and coverage provisions purport to limit the coverage available to disabilities

caused by "Sickness or disease which first manifests itself after the Date of Issue," and to exclude coverage for

preexisting conditions that were "not disclosed on [the] application." While, at the same time, the

incontestability clause bars the insurer from denying coverage "because a sickness or physical condition ...

had existed before the Date of Issue."

¶49 We agree with the California court's analysis of the effect of the statutory provisions. Moreover, based

on the statutory provisions in § 33-22-203(3) and (4), MCA, and the plain language of § 33-22-205, MCA, which

states that no policy "shall be reduced or denied on the ground that a disease or physical condition not

excluded from coverage by name or specific description effective on the date of loss had existed prior to

MARIE DEONIER & ASSOCIATES,

the

effective date ... of this policy," the two provisions drafted by Paul Revere in its disability policy which define

"Sickness" and "Pre-Existing Condition," create a conflict in which the incontestability clause must control.

¶50 We agree with the following, as expressed by the California Supreme Court in Galanty:

In the particular context of disability insurance, the Legislature has given insurers the following protections

against fraud: The insurer may use a form of incontestability clause that expressly preserves its right to void

the policy and to deny claims based on fraudulent misstatements at any time [§ 33-22-205(1), MCA]. Moreover,

if the insurer chooses to use the other form of incontestability clause [§ 33-22-205(3), MCA], the insurer still

has two years after issuing the policy to investigate the insured's medical condition and statements in the

application. Only an insurer, like Paul Revere in the case before us, that chooses to forgo both contractual

protection against fraud and timely verification of the insured's medical condition runs the risk of having to pay

a claim that may turn out to be related to a sickness that first manifested itself before the policy's inception

date. Under these circumstances, there is nothing unfair in the Legislature's evident policy judgment that any

risk of fraud is outweighed, after the period of contestability has run, by the need to protect the value of the

policy to the insured and to reduce litigation. To hold otherwise would be to permit such a clause in its

unqualified form to remain in a policy as a deceptive inducement to the insured.

Galanty, 1 P.3d at 388-89 (citations omitted) (emphasis added).

¶51 [3] Consequently, we conclude that the incontestability clause bars insurers from denying coverage for a

disability, whether or not the causative sickness first manifested itself before the policy's date of issue. We

further conclude that Paul Revere's assertion of the Forman defense to deny Vestal's disability claim was in

violation of Montana law.

ISSUE 3

¶52 Did the District Court err when it required Paul Revere to indemnify Deonier?

¶53 Paul Revere asserts that the District Court erred when it concluded that Deonier was acting as Paul

Revere's agent and therefore entitled to indemnification. Paul Revere contends that Deonier was the agent of

Vestal when recommending a disability policy for her and not acting as an agent for Paul Revere and, therefore,

Paul Revere had no duty to indemnify Deonier. Additionally, Paul Revere asserts that it was not required to

indemnify Deonier because the fees incurred by her in defending Vestal 's claims were for claims that she was

actively negligent, which would defeat an indemnity claim.

¶54 The claim against Deonier for which Deonier sought indemnification by Paul Revere was a claim of

negligent misrepresentation made by Vestal. Vestal's complaint alleged that Deonier negligently misrepresented

the coverage under Paul Revere's disability policy and sought recovery from Deonier on that basis. Deonier

cross-claimed against Paul Revere and claimed that Paul Revere had breached its duty to indemnify Deonier for

the damages she had suffered as a result of Vestal's lawsuit against her. In its answer to Deonier's cross-claim,

Paul Revere acknowledged that there was no basis in law or fact for Vestal's allegation that Deonier

misrepresented coverage under the policy.

¶55 Following a bench trial, the District Court made the following finding of fact:

4. Deonier testified that she was an independent agent in placing insurance contracts and not controlled by

Revere. She testified that she considered herself Vestal's agent when she sold a policy. The policy provisions

in the policy sold to Vestal were the provisions formulated by Revere. Deonier would explain those policy

provisions to the customer. When Deonier explained the benefits available under the policy, Vestal decided she

was interested in the policy. In the process, Deonier was soliciting the application of Vestal and promoting the

sale of Revere's product which was one of its insurance policy forms. Deonier had no discretion to change the

form of Revere.

¶56 Based on its findings of fact, the District Court made the following conclusions of law:

2. Deonier was acting as an agent for Revere for the activities that gave rise to the claim that Vestal asserted

against Deonier. An agent may represent both the insurer and the insured at various stages in conducting an

insurance transaction. Couch on Insurance 2d. § 45:4 (3d)Ed. (1997). Although generally an insurance

broker is

regarded as the agent of the insured in certain portions of the transaction, the broker may also be acting as

agent of the insurer in other portions of the transaction. Nautilus Insurance Company v. First National

Insurance, Inc., 254 Mont. 296, 299, 837 P.2d 409 (1992). Here the actions of Deonier for purposes of soliciting

and procuring the insurance and preparing the application are as agents for the insurer, Revere. Tynes v.

Bankers Life Co., 224 Mont. 350, 730 P.2d 1115 (1986). Deonier was the agent of Revere and handling the

matters for which claims were made by Vestal against Deonier.

3. Since Deonier was acting as agent for Revere for the matters for which claim is made against Deonier by

Vestal, Revere owes a duty of indemnity under the provisions of Restatement (Second) of Agency § 439 (1958)

which provides:

Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the

illegality of his conduct to indemnify him for:

....

(d) expenses of defending actions by third persons brought because of the agent's authorized conduct, such

actions being unfounded but not brought in bad faith;

....

... In this case by its pleadings Revere acknowledges that the actions of Deonier were not illegal or improper as

between Deonier and Vestal.

¶57 In Tynes v. Bankers Life Company (1986), 224 Mont. 350, 361, 730 P.2d 1115, 1122, we cited the following

from 16 J. Appleman, Insurance Law & Practice § 8697, at 276 (1981): "a soliciting agent of an insurance

company is the agent of the insurer and not of the insured for the purpose of soliciting and procuring the

insurance and preparing the application."

¶58 The relevant portions of 16 J. Appleman's Insurance Law & Practice §§ 8696-97 provide as follows:

A "general" agent is ordinarily one who is authorized to accept risks, to agree upon and settle terms of

insurance contracts, to issue policies of insurance, to renew policies, and to change, modify, or vary the terms

of existing contracts, as distinguished from a "soliciting" agent, who merely procures applications, forwards

them to other officers of the insurer, collects premiums, and delivers policies.

....

... The almost unanimous weight of authority is now, particularly in view of the fact that most states expressly

so provide by statute, to the effect that a soliciting agent of an insurance company is the agent of the insurer

and not of the insured for the purpose of soliciting and procuring the insurance and preparing the application.

¶59 Our review of the record reveals that the District Court's finding of fact, that "[i]n the process, Deonier

was soliciting the application of Vestal and promoting the sale of Revere's product which was one of its

insurance policy forms," is supported by substantial evidence and is therefore not clearly erroneous. The

Broker Agreement between Deonier and Paul Revere provided that "[y]ou are hereby appointed a Broker for

each Paul Revere Company with which You become properly licensed. This appointment is for the purpose of:

soliciting applications for insurance policies ... delivering policies issued on such applications and collecting

the first insurance premiums ...." Accordingly, we agree that under the circumstances in this case, Deonier was

soliciting Vestal's application for Paul Revere.

¶60 Moreover, based on our discussion in Tynes and the principles set forth in Appleman, Insurance Law &

Practice §§ 8696-97, we conclude that the District Court's conclusion of law, which determined that Deonier

was acting as the agent of Paul Revere while Deonier was soliciting and procuring the insurance and preparing

Vestal's application for Paul Revere's disability policy, is correct. Consequently, because the alleged actions

for which Vestal filed suit against Deonier, namely negligent misrepresentation of the coverage provided by the

policy, were authorized and proper actions performed as part of the solicitation of the application and,

therefore, performed by Deonier as an agent of Paul Revere, Paul Revere was required to indemnify Deonier for

the expenses of defending the action pursuant to the Restatement (Second) of Agency § 439 (1958).

¶61 Paul Revere additionally argues that in order for Deonier to claim a right to indemnity she must be able to

prove that her liability to Vestal arose only because of the relationship between Deonier and Paul Revere and

not due to any negligence on the part of Deonier, citing Rogers v. Western Airline (1979), 184 Mont. 170, 176,

602 P.2d 171, 174. Paul Revere asserts that the claim Deonier was defending, if proved, would reveal that

Deonier acted negligently, thereby defeating her indemnity claim.

¶62 [4] We conclude that Paul Revere's argument is without merit. Paul Revere has previously admitted in its

pleadings that there was no basis in law or fact for the negligent misrepresentation claim against Deonier.

Consequently, Paul Revere has implicitly conceded that Deonier's liability to Vestal arose solely because of the

agency relationship between Deonier and Paul Revere, a situation in which indemnity is required.

¶63 Accordingly, we conclude that the District Court did not err when it entered judgment against Paul

Revere requiring Paul Revere to indemnify Deonier for the expenses of defending Vestal's action against her,

brought because of Deonier's authorized conduct as Paul Revere's agent.

¶64 We reverse the District Court's dismissal of Deonier's claim for breach of fiduciary duty by summary

judgment and affirm the District Court's judgment requiring Paul Revere to indemnify Deonier. We furthermore

conclude that the Forman defense is contrary to the law in Montana and remand for further proceedings

consistent with this opinion.

CHIEF JUSTICE TURNAGE, JUSTICES HUNT, GRAY, NELSON, LEAPHART and REGNIER concur.