## NORTHERN INDIANA PUBLIC SERVICE COMPANY, Appellant–Defendant,

v.

## John S. BLOOM, as Personal Representative of the Estate of Fred J. Zurbrick, deceased, Appellee–Plaintiff.

No. 02A04–0309–CV–475.

Court of Appeals of Indiana.

Oct. 27, 2004.

Paul A. Rake, John M. McCrum, Robert J. Feldt, Eichorn & Eichorn, Hammond, IN, Attorneys for Appellant.

Dane L. Tubergen, James J. Shea, Sr., Daniel J. Palmer, Hunt, Suedhoff, Kalamaros, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Northern Indiana Public Service Company (NIPSCO) employee Fred Zurbrick was killed in an automobile accident with Charmaine Minniefield while driving a NIPSCO vehicle home from work. Minniefield filed suit against NIPSCO and Zurbrick's estate (the "Estate") for injuries to herself and her passengers as well as property damage. NIPSCO filed dis-

positive motions arguing that it was not responsible for Zurbrick's actions because he was a commuter rather than an employee in the course of his employment. The trial court found that a genuine issue of material fact existed as to whether Zurbrick was a commuter at the time of the accident, but that NIPSCO was liable regardless of the outcome of that issue. The trial court found that NIPSCO was to pay for the Estate's legal defense and to act as the Estate's insurance carrier for up to one million dollars.[1] NIPSCO now appeals. We affirm in part and reverse in part.

### Issues

NIPSCO raises three issues which we consolidate and restate as:

1. Whether the trial court properly found that NIPSCO was obligated to pay for the Estate's legal defense and to act as the Estate's insurance carrier; and

2. Whether the trial court properly found that NIPSCO was to indemnify the Estate for up to one million dollars.

### Facts and Procedural History

Fred Zurbrick was employed at NIPSCO. On January 26, 2001, he was driving a NIPSCO-owned vehicle home from work when he was involved in an accident with Charmaine Minniefield. Zurbrick was killed in the accident and Minniefield and her passengers were injured. Minniefield, on behalf of herself and her passengers, filed her original claim against NIPSCO and NiSource, Inc.[2] on March 12, 2002, seeking recovery from NIPSCO as Zurbrick's employer pursuant to the theory of respondeat superior. NIPSCO responded and filed a counter-claim against Minniefield for damage to its vehicle. Minniefield amended her complaint to add the Estate as a defendant, also seeking recovery from the Estate for Zurbrick's alleged negligence. NIPSCO filed a cross-claim against the Estate on April 21, 2003, followed by a Motion for Summary Judgment regarding Minniefield's respondeat superior claim, arguing that Zurbrick was a commuter at the time of the accident and therefore, NIPSCO was not liable for his actions. The Estate then filed a cross-claim against NIPSCO. NIPSCO filed a Motion to Dismiss the Estate's cross-claim and the Estate responded by filing Motions for Summary Judgment on NIPSCO's cross-claim and the Estate's cross-claim. On August 13, 2002, the trial court held a hearing on these motions as well as NIPSCO's Motion for Summary Judgment disclaiming vicarious liability under respondeat superior.

The trial court ruled from the bench that a genuine issue of material fact existed as to whether Zurbrick was an employee acting in the course of his employment at the time of the accident. However, the trial court found that NIPSCO was liable for Zurbrick's negligence either way: if he was an employee acting in the course of his employment, NIPSCO was liable under respondeat superior and if he was a commuter, NIPSCO was liable under a permissive user theory. The trial court ordered NIPSCO to pay for the Estate's legal defense in the underlying case and to act as the Estate's insurance carrier up to one million dollars.[3] This appeal ensued.

---

1. NIPSCO was self-insured up to one million dollars, and carried an excess insurance policy for judgments or claims settled in excess of that amount. *See* Brief of the Appellant at 8.

2. NiSource, an unrelated parent of NIPSCO, was later dismissed from this action.

3. The trial court subsequently memorialized its ruling in a written order.

*Discussion and Decision*

## I. Standard of Review for Motions for Summary Judgment

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When determining the propriety of summary judgment, we use the same standard as the trial court. *Caito Foods v. Keyes*, 799 N.E.2d 1200, 1201 (Ind.Ct.App. 2003). We construe all facts and reasonable inferences to be drawn therefrom in favor of the non-movant. *Id.* When there is a genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Id.* Where, as here, the material facts are essentially undisputed, out task is to determine whether the trial court properly applied the law to the facts. *Id.*

## II. Defense Against Minniefield's Claims

■ NIPSCO first argues that the trial court erred in finding that NIPSCO was liable for the Estate's legal defense and was to act as insurance carrier for the Estate. NIPSCO argues that the Financial Responsibility Act merely requires that persons who register or operate vehicles in Indiana meet the minimum standards of financial responsibility with respect to the motor vehicle:

For the purposes of this article, financial responsibility is in effect with respect to a motor vehicle if:

(1) a motor vehicle liability insurance policy issued with respect to the vehicle;

(2) a bond executed with respect to the vehicle under section 7 of this chapter; or

(3) the status of the owner or operator of the vehicle as a self-insurer, as recognized by the bureau through the issuance of a certificate of self-insurance under section 11 of this chapter;

provides the ability to respond in damages for liability arising out of the ownership, maintenance, or use of the motor vehicle in amounts at least equal to those set forth in section 5 or 6 of this chapter.

Ind.Code § 9–25–4–4(a). As allowed by section 9–25–4–4(a)(3), NIPSCO elected to meet its financial responsibility obligation by qualifying as a self-insured. NIPSCO argues that the trial court erred in requiring it to defend and indemnify the Estate because, by doing so, the trial court treated NIPSCO like an insurance carrier rather than a self-insured party.

The caselaw on self-insured liability in Indiana is sparse. In *City of Gary v. Allstate Insurance Company*, 612 N.E.2d 115 (Ind.1993), our supreme court was presented with the question of whether a self-insured city was required to provide uninsured motorist coverage to an injured police officer. Luis Deluna, while on duty as a Gary Police Officer, was operating a city-owned police car when he was involved in an accident. Deluna sued the other driver for injuries he sustained in the accident. Upon learning that the other driver's insurance company was insolvent, Deluna amended his complaint to add his own insurance company, Allstate, as his policy included uninsured motorist coverage. In turn, Allstate filed a third party complaint against the city alleging that the city, as the self-insurer for the vehicle, was primarily liable for uninsured motorist coverage. Allstate filed a motion for summary judgment in the trial court and the trial court granted the motion. *Id.* at 116.

Upon appeal, our supreme court first examined the purpose of the Financial Responsibility Act:

The purpose of Indiana's financial responsibility law is to compel motorists to make provisions for the protection of other drivers on the road so that a driver may be protected from damages which might be inflicted on him by another. Although Indiana may be referred to as a compulsory financial responsibility state, a victim is not guaranteed compensation in every automobile accident. A person complies with the financial responsibility law by providing proof that the person is able to respond in damages for liability caused through the ownership of the motor vehicle in the statutory amount. The law permits proof of financial responsibility through the purchase of motor vehicle liability insurance, through bond, deposit of funds or securities, or self-insurance.

*Id.* at 117 (internal citations omitted). The court then examined the concept of self-insurance:

Self-insurance, however, is not insurance at all but, rather, is the "antithesis of insurance." In [*American Nurses Association v. Passaic General Hospital,* 192 N.J.Super. 486, 471 A.2d 66 (1984) ] the court explained, "the essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." [*Id.*] at 69. As a result, the choice to self-insure does not mean that the party has "insur-

ance," but rather that the party has chosen to retain the risk.

*Id.* at 118 (internal citations omitted).[4] NIPSCO contends that this language supports their argument that the trial court improperly treated them like an insurance carrier. However, we believe that it supports the Estate's argument that, although being self-insured is not akin to being insured, it is a choice to retain the risk of liability and all that entails. To hold otherwise would be to state that a party may escape liability by self-insuring. *See Barnes v. Whitt,* 852 P.2d 1322, 1326 (Colo. Ct.App.1993) (holding that self-insurer must provide liability coverage to permissive users and pay a judgment obtained not just against itself because to hold otherwise "would place the self-insurer in a position superior to that of an owner who has ... purchas[ed] an insurance policy.").

Although NIPSCO argues that it should not have to defend the Estate against Minniefield's claims, we note the specific language of the Financial Responsibility Act which states that, for the requirements of financial responsibility to be met, the person or corporation must provide "the ability to respond in damages *for liability* arising out of the ownership, maintenance, or use of the motor vehicle...." Ind.Code § 9–25–4–4(a). The statute does not state that NIPSCO should be able to respond in damages only for its own liability, but for any liability arising out of use of the vehicle.[5]

---

**4.** The court ultimately determined that the city was not liable for uninsured motorist coverage because Indiana Code section 27–7–5–2 applies only to "insurers" who issue or deliver a "liability policy of insurance." *Id.* at 119.

**5.** The dissent concludes that NIPSCO is under no obligation to defend the Estate because there is no contract of insurance and the statute does not impose such an obligation.

However, if NIPSCO were insured, rather than self-insured, the insurance company would hire an attorney and defend the action on the Estate's behalf. The mere fact that NIPSCO is self-insured shouldn't put the *Estate* in a worse position—especially since the Estate had no say in the decision for NIPSCO to be self-insured. Defending the Estate in this circumstance is one of the obligations of insurance—an obligation NIPSCO has chosen to undertake for itself.

Additionally, we note the language of the trial court's order:

[If we were to find that NIPSCO was not liable], every NIPSCO employee traveling to and from work in a NIP-SCO vehicle supplied to that employee by NIPSCO travels at his or her own peril. They are uninsured for that commute, whether it is one block or 100 miles. NIPSCO's position is that unless its employee is acting within the scope of his or her employment, NIPSCO has the right to be indemnified by that employee for any monies it is required to pay. Certainly, the State of Indiana did not contemplate that NIPSCO would place its employees in such a precarious position. Public policy prevents NIP-SCO from disclaiming financial responsibility for all of its vehicles that travel Indiana's roadways daily by refusing financial responsibility to its very own employees.

Appellant's Appendix at 48. Therefore, the trial court properly found that NIP-SCO was required to defend the Estate against Minniefield's claims.

### III. Limitation of Defense Against Minniefield's Claims

■ NIPSCO next contends that the trial court erred in finding that NIPSCO was required to indemnify the Estate up to one million dollars. NIPSCO contends that, as a self-insured certificate holder, its sole obligation is to pay the amount of money detailed in section 9–25–4–5:

Except as provided in section 6 of this chapter, *the minimum amounts* of financial responsibility are as follows:

(1) Subject to the limit set forth in subdivision (2), twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual.

(2) Fifty thousand dollars ($50,000) for bodily injury to or the death of two (2) or more individuals in any one (1) accident.

(3) Ten thousand dollars ($10,000) for damage to or the destruction of property in one (1) accident.

Ind.Code § 9–25–4–5 (emphasis added).[6] Because there was bodily injury to more than one individual and there was also property damage, NIPSCO contends that its liability should have been limited to $60,000—$50,000 for bodily injury and $10,000 for property damage.

The Estate contends, and we agree, that the statute provides only a minimum amount of coverage required rather than a limit to the coverage. NIPSCO would have us read section 9–25–4–5 as a cap on the amount a self-insured must pay, but the clear language of the statute does not support such a reading. Moreover, we note that section 9–25–4–4 states that a self-insurer satisfies the financial responsibility requirements by providing the ability to respond in damages "in amounts *at least* equal to those set forth in section 5...." Ind.Code § 9–25–4–4 (emphasis added).

To assist in determining the proper course of action, we consider what would have happened had NIPSCO's vehicle been insured rather than self-insured. If NIPSCO's vehicle had been insured, NIP-SCO would have been liable for the entire amount of damages resulting from the accident under either the respondeat superior theory or the permissive user theory. It would not have been able to argue that its insurance policy limits were sixty thousand dollars and therefore, it could not be held liable for more than that amount.

■ The policy behind the Financial Responsibility Act is clearly to guarantee that

**6.** Section 6 of the chapter concerns recovery vehicles and is not applicable to this case.

all vehicles registered or operated in Indiana have insurance or some other financial guarantee in the event liability arises from its ownership. It is contrary to public policy to allow a self-insured entity to limit its liability to the statutory minimum. To so hold would create a special status for the self-insured. If we were to hold that NIPSCO was liable only for the statutory minimum, every person and corporation in Indiana would self-insure their vehicles, safe in the knowledge that they would never be liable for more than the statutory minimum. We cannot believe that the legislature intended self-insurance as a method for escaping liability for any damage above the amount clearly stated to be a minimum.

■ Therefore, we hold that the trial court did not err in finding NIPSCO is liable for damages resulting from Zurbrick's actions. However, we hold that the trial court erred in limiting NIPSCO's liability to one million dollars. As noted above, were NIPSCO insured, its liability would not be limited by the amount of insurance coverage it had. Rather, NIPSCO's liability would be limited only by the amount of damages sustained by the Minniefields. Thus, the trial court erred in specifically stating that NIPSCO was liable only up to one million dollars. We therefore reverse that part of the trial court's order.

### Conclusion

The question of whether Zurbrick was an employee in the course of his employment or a commuter remains to be decided by a trier of fact. Regardless of the outcome of that question, the trial court properly found that NIPSCO was required to defend and indemnify the Estate. However, the trial court erred in capping NIPSCO's liability at one million dollars. Therefore, we affirm the trial court's deci-

sion as to liability, but reverse as to the limit of liability.

Affirmed·in part and reversed in part.

DARDEN, J., concurs.

SHARPNACK, J., concurs in part and dissents in part with opinion.

SHARPNACK, Judge, concurring in part and dissenting in part.

I concur in part and respectfully dissent in part. I concur that NIPSCO's obligation to respond in damages to the Minniefields as self-insurer of the vehicle driven by Zurbrick for Zurbrick's liability would not be·limited to Fifty Thousand Dollars or One Million Dollars for bodily injuries to the Minniefields. It would be limited only by the extent of the Minniefields' damages.

I dissent from the conclusion that NIPSCO is obligated to defend Zurbrick's Estate against the Minniefields' claims, although it strikes me that it would be in NIPSCO's interest to do so.

It is the relationship between NIPSCO as self-insurer and Zurbrick that determines NIPSCO's obligations. That relationship is not defined in any contract between them. As a self-insurer, NIPSCO is not an automobile liability insurance company and Zurbrick was not an insured under a policy contract issued by NIPSCO. *City of Gary v. Allstate Ins. Co.*, 612 N.E.2d 115, 118–119 (Ind.1993) ("In choosing to be self-insured for purposes of the financial responsibility law, the City obligated itself to pay judgments rendered against it. In exchange for assuming the risk of paying judgments, the City has saved the expense of purchasing a policy of insurance which would cover this risk. This does not mean, however, that the City has issued a 'policy of insurance' or that it has become·an 'insurer' for anything be-

yond meeting the requirements of the financial responsibility act").

The relationship between an insurer and the insured is governed by the contract between them. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 518 (Ind.1993) ("Clearly, a relationship exists between an insurer and its insured because they are in privity of contract"). Typically, the insurer agrees to pay any liability for damages the insured incurs as a result of using the automobile described in the policy. Also typically, the insurer agrees to defend the insured against any claims and retains the right to control that defense. It is in the insurer's interest to do this, because it will be the one obligated to pay the damages for which its insured is liable.

Here, there is no contract. The obligations here arise from the financial responsibility statutes as they pertain to self-insurers. NIPSCO has met its obligation to provide proof of financial responsibility by obtaining a "certificate of self insurance" as provided for in Ind.Code § 9–25–4–4 (1998). Under that statute, NIPSCO provided its "ability to respond in damages for liability arising out of the ... use of the motor vehicle" driven by Zurbrick. I.C. § 9–25–4–4 (1998). The "liability" is defined by "arising out of the use of the motor vehicle" not by whose use created the liability. Id. NIPSCO could itself have liability to the Minniefields vicariously under respondeat superior, but in any event would be liable to pay the Minniefields' damages resulting from the use of the vehicle driven by Zurbrick.

There is nothing in the statute that imposes any other obligation on NIPSCO, and there is no contract by which it has agreed to any other obligation. I therefore conclude it has no initial obligation to defend the estate.

However, the effect of the statute is to require NIPSCO to pay the damages for which Zurbrick might be liable. If Zurbrick's estate were liable to pay, it could seek indemnity from NIPSCO to require it to pay the damages and to pay the costs the estate incurred in defending against liability to pay damages that NIPSCO is required by the statute to pay. *Bethlehem Steel Corp. v. Sercon Corp.,* 654 N.E.2d 1163, 1169 (Ind.Ct.App.1995) ("An indemnitee, who incurs legal expenses through defending an action against him for which he is entitled to indemnification, is entitled to recover the expense of creating his defense, including reasonable attorney fees"), *reh'g denied, trans. denied.* The net effect of my analysis is that ultimately NIPSCO may have liability to pay the costs of defending the estate, but is under no present obligation to do so.