ATTORNEYS FOR APPELLANT
Paul A. Rake
John M. McCrum
Robert J. Feldt
Hammond, Indiana

ATTORNEYS FOR APPELLEES
Dane L. Tubergen
James J. Shea, Sr.
Daniel J. Palmer
Fort Wayne, Indiana

Sherrill Wm. Colvin
George Sistevaris
Fort Wayne, Indiana

# In the
# Indiana Supreme Court

No. 02S04-0505-CV-204

NORTHERN INDIANA PUBLIC SERVICE
COMPANY,

*Appellant (Defendant below),*

v.

JOHN S. BLOOM, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF FRED J. ZURBRICK, DECEASED,
CHARMAINE R. MINNIEFIELD, INDIVIDUALLY AND AS
MOTHER AND NEXT FRIEND FOR RAYVEN
MINNIEFIELD-BRYANT AND CIENNA MINNIEFIELD,
MINORS, AND DENIECE WOODSON,

*Appellees (Plaintiffs  below).*

Appeal from the Allen Superior Court, No. 02D01-0203-CT-104
The Honorable Nancy Eschoff Boyer, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 02A04-0309-CV-475

**May 18, 2006**

**Boehm, Justice.**

We hold that self-insurers are statutorily liable to pay damages caused by the negligence of permissive users of their vehicles up to the minimum amounts required by the Financial Re-

sponsibility Act. We further hold that a self-insured employer who furnishes its vehicle for use by an employee has a duty to inform its employee of the limits of the employer's statutory obligation to third parties and the employee's potential exposure for negligent operation of the vehicle. We conclude that failure to perform this duty imposes an obligation to indemnify and defend the employee against liability arising out of the employee's permissive use of the employer's vehicle, and precludes the employer from asserting indemnity or subrogation rights against the employee.

**Facts and Procedural History**

Northern Indiana Public Service Company ("NIPSCO") employed Fred Zurbrick and allowed him to drive a NIPSCO owned truck to and from work. Under Indiana's Financial Responsibility Act, Indiana Code sections 9-25-1-1 through 9-25-9-7, NIPSCO self-insured the truck. The Bureau of Motor Vehicles' regulations provide that a self-insurer must deposit $40,000 for the first self-insured vehicle, and $20,000 for each additional vehicle up to a maximum deposit of one million dollars. NIPSCO apparently had at least 49 self-insured vehicles because it had deposited one million dollars with the Bureau. NIPSCO also had an excess policy covering its liability in excess of one million dollars per occurrence.

While driving NIPSCO's truck, Zurbrick was killed in an accident involving a vehicle driven by Charmaine Minniefield. On behalf of herself and her injured passengers, Minniefield sued NIPSCO and Zurbrick's Estate, claiming negligence as to Zurbrick and respondeat superior as to NIPSCO.

NIPSCO counterclaimed against Minniefield for damage to its truck and cross claimed against the Estate for indemnification against any liability NIPSCO incurred as a result of Minniefield's claims. The Estate cross claimed against NIPSCO, seeking an order that NIPSCO defend and indemnify it against any liability to Minniefield.

In response to a flurry of summary judgment motions, the trial court (1) denied NIPSCO's motion for summary judgment on Minniefield's respondeat superior claim, concluding that there were genuine issues of material fact as to whether Zurbrick was acting within the scope of his employment at the time of the accident, (2) granted summary judgment to the Estate

2

on its request for defense and indemnity from NIPSCO, and (3) denied NIPSCO's motion for summary judgment as to the Estate's liability to NIPSCO. The trial court ordered NIPSCO to pay for the Estate's legal defense and to pay any judgment that might be entered against the Estate up to the amount of NIPSCO's deposit with the Bureau of Motor Vehicles. The trial court concluded that the Estate would be covered by NIPSCO's excess liability insurance policy for judgments in excess of NIPSCO's deposit.

NIPSCO appealed the trial court's order requiring NIPSCO to defend and indemnify the Estate and denying NIPSCO's right to seek indemnification from the Estate. NIPSCO did not appeal the trial court's denial of its motion for summary judgment on the question of whether Zurbrick was acting within the scope of his employment at the time of the accident. The Court of Appeals upheld the trial court's order requiring NIPSCO to defend and indemnify the Estate, but reversed the part of the trial court's order capping NIPSCO's liability at one million dollars. N. Ind. Pub. Serv. Co. v. Bloom, 816 N.E.2d 887, 893 (Ind. Ct. App. 2004). We granted transfer. Bloom, 831 N.E.2d 746 (Ind. 2005).

## I. Appellate Jurisdiction

NISPCO appealed the trial court's interlocutory order under two distinct provisions of Indiana Appellate Rule 14. NIPSCO argued that an "[o]rder to pay for a defense and insurance coverage" was appealable as of right as an order "[f]or the payment of money" under Rule 14(A)(1). Additionally, pursuant to Rule 14(B), the trial court certified for appellate review both its order directing NIPSCO to defend and indemnify the Estate and its order denying NIPSCO's right to indemnification from the Estate. The Court of Appeals did not indicate the jurisdictional ground on which it heard NIPSCO's appeal, and the Estate has not challenged the appealability of the trial court's order. We do not agree that an order to indemnify is an order "for the payment of money" for purposes of Appellate Rule 14(A)(1) because it is not specific as to the amount and simply describes a legal relationship that may have financial consequences. We do accept the Court of Appeals' opinion on the merits as an implicit acceptance of discretionary interlocutory appeal under Rule 14(B).

When reviewing a grant or denial of summary judgment the standard of review is the same as the standard governing summary judgment in the trial court: whether there is a genuine

issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan, 728 N.E.2d 855, 858 (Ind. 2000). Summary judgment should be granted only if the evidence designated pursuant to Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152 (Ind. 2005). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. Tibbs v. Huber, Hunt & Nichols, Inc., 668 N.E.2d 248, 249 (Ind. 1996).

## II. Self-Insured's Liability for Permissive User's Negligence

The trial court concluded that under the Financial Responsibility Act self-insured entities are liable for damages arising from the negligent operation of a self-insured vehicle by a permissive user. NIPSCO and the Estate agree that Zurbrick was a permissive user of NIPSCO's vehicle at the time of the accident. Accordingly, the trial court further concluded that if Zurbrick was negligent, NIPSCO is statutorily liable to Minniefield for that negligence even if Zurbrick's actions were outside the scope of employment.

NIPSCO concedes that, as a self-insured entity, it is statutorily liable to Minniefield for damages caused by the negligence of a permissive user of NIPSCO's vehicle. NIPSCO further concedes that under the doctrine of respondeat superior it may have unlimited liability for the negligence of its employee in the scope of employment but argues that its liability for the negligence of a permissive user under the Act is limited to the statutory minimum amounts required by section 9-25-4-5 of the Financial Responsibility Act. Specifically, NIPSCO claims that on the facts of this case its liability to Minniefield is limited to $60,000.

Section 9-25-4-4(a) of the Act provides in relevant part that financial responsibility is in effect on a vehicle when (1) a "motor vehicle liability insurance policy," (2) self-insurance, or (3) a bond "provides the ability to respond in damages for liability arising out of the ownership, maintenance, or use of the motor vehicle in amounts at least equal to those set forth in section 5 . . . ." Section 5 provides in relevant part:

The minimum amounts of financial responsibility are as follows:

(1) Subject to the limit set forth in subdivision (2), twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual.

(2) Fifty thousand dollars ($50,000) for bodily injury to or the death of two (2) or more individuals in any one (1) accident.

(3) Ten thousand dollars ($10,000) for damage to or the destruction of property in one (1) accident.

Ind. Code § 9-25-4-5. NIPSCO argues that its potential liability to Minniefield as a self-insurer is limited to $60,000, the sum of the amounts in subsections (2) and (3) of section 5 for an accident involving injury to more than one person and damage to a vehicle.

The Court of Appeals has consistently held that contractual insurance need not provide coverage for more than the section 5 amounts. See Fed. Kemper Ins. Co. v. Brown, 674 N.E.2d 1030, 1036 (Ind. Ct. App. 1997), trans. denied; Safeco Ins. Co. v. State Farm Mut. Auto. Ins. Co., 555 N.E.2d 523, 524-25 (Ind. Ct. App. 1990), trans. denied (interpreting the statutory predecessor to the present section 5). Whether a self-insurer's obligation is limited by section 5 is a question of first impression in Indiana. However, NIPSCO's contention finds support in authority from other jurisdictions. Several courts have held that self-insurers subject to mandatory uninsured and underinsured motorist statutes are obligated to provide uninsured and underinsured motorist coverage only in the statutorily mandated minimum amounts.[1] Similarly, in disputes between a self-insurer and a permissive user's insurance carrier, courts which have concluded that self-insurance is "other insurance" within the meaning of the carrier's policy have concluded that the coverage provided by the self-insurer as an "other insurer" is limited to minimum statutory amounts in state financial responsibility laws.[2] There is also at least one case that has held that a self-insurer's liability to injured third parties for negligent operation of the self-insured vehicle by a permissive user is limited to minimum statutory coverage limits applicable to contrac-

---

[1] See, e.g., Twyman v. Robinson, 342 S.E.2d 313, 315 (Ga. 1986) (minimum statutorily required uninsured motorist coverage will be implied in the plan of self-insurance); Rox v. Allstate Ins. Co., 595 A.2d 563, 566-67 (N.J. Super. Ct. Law Div. 1991) (Self-insured municipality was required to provide uninsured motorist coverage to city detectives injured by an uninsured motorist, up to statutorily required minimum coverage of $15,000 each).

[2] See, e.g., Amer. Family Mut. Ins. Co. v. Mo. Power & Light Co., 517 S.W.2d 110, 116-17 (Mo. 1974) (Seiler, J., dissenting) (where employee's insurer had settled a claim against employee arising out of employee's permissive use of self-insured employer's vehicle, self-insurance is "other insurance" within the meaning of the employee's insurer's policy and self-insurer must pay statutory liability minimums to employee's insurer); S. Home Ins. Co. v. Burdette's Leasing Serv., Inc., 234 S.E.2d 870, 872 (S.C. 1977) (legislative intent behind the financial responsibility law was that self-insurance substitute for liability insurance to the extent of statutory minimum policy limits).

5

tual insurance.[3] Each of these turns to some extent on the language of the particular state statute. We nevertheless reach the same result under the Indiana statute.

The purpose of the Financial Responsibility Act is to assure a source of compensation for victims harmed by the negligent operation of motor vehicles. Fed. Kemper Ins. Co., 674 N.E.2d at 1035. This assurance can be provided by an insurance policy, self-insurance, or a bond. We think it is clear that the General Assembly intended for self-insurance to afford compensation equivalent to that afforded by a "motor vehicle liability insurance policy," which necessarily means a policy in compliance with the applicable insurance laws and regulations. Although the statutory language could be clearer, it has long been construed to mean that the damage amounts in section 5 of the Act are the mandatory minimum coverage amounts that must be included in every "motor vehicle liability insurance policy" under the Act. Accordingly, we conclude that self-insurers, to provide security equivalent to that offered by a liability policy, must respond in damages to persons injured up to the section 5 amounts, but no greater than those in section 5. See Fed. Kemper Ins. Co., 674 N.E.2d at 1036 (Indiana's Financial Responsibility Act attempts to assure no more than the availability of the statutory minimum amount of coverage); Safeco Ins. Co., 555 N.E.2d at 524-25 (same).

The trial court found that the Financial Responsibility Act caps NIPSCO's potential liability to Minniefield at the amount of NIPSCO's deposit with the Bureau of Motor Vehicles, namely, one million dollars. Administrative regulations provide in relevant part:

Financial Collateral
(a) No person shall be approved as a self-insurer unless certain minimum financial collateral is deposited either with the treasurer with receipt to the bureau of motor vehicles or with the bureau of motor vehicles. The minimum financial collateral to be furnished by the self-insurer is forty thousand dollars ($40,000) for the first vehicle and twenty thousand ($20,000) for each vehicle up to a maximum of one million dollars ($1,000,000).

140 Ind. Admin. Code § 1-7-3(a) (2005). The regulation further provides that collateral may take the form of currency, irrevocable letter of credit, escrow accounts or surety bond. Id. Because NIPSCO self-insured a large fleet of vehicles, it had deposited the regulatory maximum,

---

[3] See Foster v. Salt Lake County, 712 P.2d 224, 227 (Utah 1985) (A county was liable only for $15,000 bodily insurance coverage as a self-insured owner of a motor vehicle that was negligently operated by a county employee resulting in the death of a 16-year old boy where the state financial responsibility law required that self-insurers provide only security "equivalent to that offered by a policy of insurance" and where, at the time of the accident, the minimum limits for bodily injury to or for the death of one person in any one accident were fixed at $15,000).

one million dollars, with the Bureau. We believe the bond is, as the regulation states, "collateral," i.e. security for payment of amounts fixed by section 5. The amount of the bond is a function of the number of vehicles that are self-insured, not the amount of liability for a single incident.

In sum, we conclude that a self-insured entity is statutorily liable to pay damages inflicted by the negligence of a permissive user of the self-insured vehicle in the amounts contained in section 5 of the Financial Responsibility Act. Of course the self-insured entity may have additional liability under other theories, such as respondeat superior or negligent entrustment. We do not address those.

### III. Obligation of a Self-Insurer to Permissive Users

The Estate seeks an order requiring NIPSCO to defend and indemnify it against any liability to Minniefield. NIPSCO counters with a request that the Estate indemnify it for any liability it incurs as a result of Minniefield's claims. Specifically, NIPSCO asserts a right to indemnification for its potential direct liability to Minniefield as a self-insurer who is obligated to an injured third party and also for its potential derivative liability under respondeat superior. NIPSCO presumably could also assert a direct claim for negligent damage to its vehicle although it does not do so here.[4] We conclude that the rights and obligations of NIPSCO and the Estate viz-a-viz each other implicate both the Financial Responsibility Act and agency principles.

A. *Financial Responsibility Act*

The Estate claims that section 9-25-4-4 of the Act creates an insurance relationship between Zurbrick and NIPSCO and therefore NIPSCO has a statutory duty to indemnify and defend the Estate as to liability to Minniefield. Self-insurance is to provide "the ability to respond in damages for liability arising out of the ownership, maintenance, or use of the motor vehicle." I.C. 9-25-4-4. The Estate argues this language does not include any restrictive words, such as "liability of the owner from his use of the vehicle" or "liability of the owner but not his permitted

---

[4] Although most employers do not assert it, a claim against an employee for negligent damage to the employer's property exists at common law. See Restatement (Second) of Agency § 402(1)(a) (1958).

7

user's use." Accordingly, the Estate maintains that nothing on the face of the statute excludes coverage of the permitted user's liability for use of the vehicle.

We do not agree that section 9-25-4-4 makes NIPSCO a statutory insurer of permissive users of its vehicles with a duty to indemnify those users against loss. In the first place, if that result were intended by the General Assembly, we would expect to find in the statute language to that effect. To the contrary, section 9-25-1-4 of the Act provides that "the provisions of the [Act] relating to insurance do not apply" to self-insurance.

Equally important, if the statute did render a self-insurer an insurer, that insurance would be only the minimum required coverage under applicable statutes and regulations.[5] It would not include coverage of permissive users. The Estate notes that that Indiana Code section 27-1-13-7 requires insurance policies issued in Indiana to insure a vehicle owner against liability resulting from the negligence of a permissive user of the vehicle.[6] However, section 27-1-13-7 does not require policies to cover the liability of a permissive user. See, e.g., Standard Mut. Ins. Co. v. Pavelka, 580 F. Supp. 224, 226 (S.D. Ind. 1983); United Farm Bureau Mut. Ins. Co. v. Ludwig, 744 N.E.2d 1061, 1063-64 (Ind. Ct. App. 2001); Manor v. Statesman Ins. Co., 612 N.E.2d 1109, 1115 (Ind. Ct. App. 1993), trans. denied; Safeco Ins. Co., 555 N.E.2d at 524. This is a policy issue governed by statute and long settled precedent. Moreover, as mentioned above, section 9-25-1-4 of the Financial Responsibility Act expressly makes statutory insurance provisions such as section 27-1-13-7 inapplicable to self-insurers. Any change in this statutorily mandated arrangement is for the legislature, not the courts.

Indiana courts have had few occasions to address the nature of the relationship between the self-insured entity and permissive users of its vehicles. In City of Gary v. Allstate Insurance

---

[5] Section 9-25-4-4(b) provides that a "motor vehicle liability policy" must contain the terms provided by other statutes governing contractual insurance.

[6] Indiana Code section 27-1-13-7(a) provides in relevant part:
> Liability insurance policies -- Prohibition -- Exclusion from coverage as between spouses (a) *** No such policy shall be issued or delivered in this state to the owner of a motor vehicle, by any domestic or foreign corporation, insurance underwriters, association or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, expressed or implied, of such owner. . . .

<u>Company</u>, 612 N.E.2d 115, 119 (Ind. 1993) we held that Indiana's uninsured motorist statute did not require a self-insured municipality to provide uninsured motorist coverage to a police officer injured by an uninsured motorist while on duty and while operating a city-owned police car because the uninsured motorist coverage act applied only to insurers who issued or delivered liability policies, which did not include self-insurers under the Financial Responsibility Act. We concluded that the city had no obligation to provide the coverage because it was not an "insurer" under the uninsured motorist coverage statute and had not issued a "liability policy of insurance" within the meaning of that statute. We explained that self-insurance is not actually insurance at all but is the antithesis of insurance: "the choice to self-insure does not mean that the party has 'insurance,' but rather that the party has chosen to retain the risk." <u>Id.</u> at 118. We concluded:

> In choosing to be self-insured for purposes of the financial responsibility law, the City obligated itself to pay judgments rendered against it. In exchange for assuming the risk of paying judgments, the City has saved the expense of purchasing a policy of insurance which would cover this risk. This does not mean, however, that the City has issued a 'policy of insurance' or that it has become an 'insurer' for anything beyond meeting the requirements of the financial responsibility act. <u>Id.</u>

We conclude that the Act does not make a self-insurer a quasi-insurance carrier and require it to indemnify a permissive user. The Act's purpose is to require automobile owners to provide security to the motoring public for injuries arising out of the use of their vehicles. <u>City of Gary</u>, 612 N.E.2d at 117; <u>Transamerica Ins. Co. v. Henry</u>, 563 N.E.2d 1265, 1268 (Ind. 1990). Its purpose is not to provide security to the permissive user/tortfeasor. <u>See</u> 7A <u>Couch on Insurance (Third)</u> § 109:36 (West 1998) (citing cases for the proposition that state financial responsibility laws are not intended to protect tortfeasors against their own negligence). Moreover, the certificate of self-insurance is not an insurance policy. <u>See</u> <u>City of Gary</u>, 612 N.E.2d at 118. It is simply an assurance that judgments will be paid. The provision of this assurance does not engraft onto the Act those benefits typically provided by contractual insurance, including indemnity and duty to defend provisions. In short, nothing in the Act requires a self-insurer to indemnify and defend permissive users of its vehicles.

9

The conclusion that a self-insurer is not in the same relationship to a permissive user as a contractual insurer has a second implication. NIPSCO claims a right to be reimbursed[7] by the Estate for any liability NIPSCO incurs as a result of Minniefield's claims based on Zurbrick's negligence. NIPSCO contends that its liability under the Act and also its liability under the doctrine of respondeat superior are each solely derivative of Zurbrick's liability. NIPSCO contends that therefore it is entitled to be indemnified by Zurbrick for both of these exposures. NIPSCO cites the principle that one who is derivatively liable to a third party and who discharges the liability to the third party is entitled to be indemnified by the primarily liable party to the extent of the amount paid.

The Restatement Third of Torts: Apportionment of Liability § 22 (2000) provides in relevant part:

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if:
>> (2) the indemnitee
>>> (i) was not liable except vicariously for the tort of the indemnitor

A self-insurer's statutory liability to third parties for the negligence of a permissive user is "vicarious" as that term is used in section 22 of the Restatement. The permissive user and the self-insurer "are or may be liable for the same harm" to injured third parties. To the extent the third party's (Minniefield's) claim is solely based on the negligence of the permissive user (Zurbrick), the self-insurer's (NIPSCO's) liability under the Financial Responsibility Act is "vicarious." The self-insurer therefore has a valid claim for indemnity against the permissive user.

In the context of insurance, an insurer's right to be indemnified by its insured is barred by a doctrine commonly referred to as the "antisubrogation rule." This name may be somewhat confusing because subrogation usually refers to the right of the insurer to proceed against a third party to recover amounts it has expended for the insured or another party. Subrogation is "the substitution of one person in the place of another with reference to a lawful claim or right." See

---

[7] We use "reimburse" as a general term to describe any claim of right to recover amounts paid out for a derivative or vicarious liability whether under a theory of subrogation, or a claimed right to indemnity or otherwise.

73 Am. Jur. 2d Subrogation § 1 (2004). In the case of voluntary contractual insurance, the insurer is subrogated to the insured's right of action against any person responsible for the loss, regardless of whether the insurer would have been entitled to bring an action in its own right. See 16 Couch, supra, at § 222:5. However, an insurer's right to subrogation arises only with respect to rights against third persons. No right of subrogation arises in favor of an insurer against its own insured. Id. at § 224:1. This "antisubrogation rule" prevents an insurer from recovering back from its insured the very same risk that the insured transferred to the insurer under the policy. Id. The Estate cites this doctrine as a bar to NIPSCO's claims to be indemnified by the Estate to the extent NIPSCO is liable to Minniefield based on Zurbrick's negligence. In effect, the Estate argues that the rule is really an "antireimbursement rule" that prevents the self-insurer from obtaining reimbursement against a permissive user under subrogation or any other theory.

Most courts that have addressed a self-insurer's right of subrogation against a permissive user have done so in the context of a dispute between the self-insurer and the permissive user's liability insurer over primary responsibility for claims by a third party against the permissive user. Some courts have concluded that the permissive user is the substantial equivalent of the self-insurer's "insured," and that the provision in the permissive user's policy requiring "other insurance" to provide primary coverage leads to the conclusion that the self-insurer has no right of subrogation.[8] Other courts have concluded that a self-insurer is not an insurer of the permissive user and therefore subrogation principles do not prohibit the self-insurer from seeking reimbursement from the permissive user or the user's liability insurer.[9] Indiana's Financial Respon-

---

[8] See, e.g., S. Home Ins. Co., 234 S.E.2d at 872 (Where a permissive user's insurance carrier paid a settlement to an injured third party plaintiff, the court ordered the self-insurer to reimburse the insurance carrier for the settlement amounts. The court held that because self-insurance substitutes for an insurance policy for permissive users under the state's financial responsibility laws, self insurance is "other insurance" within meaning of carrier's insurance policy and the self-insurer must reimburse the insurance carrier for settlement amounts.); Champlain Cas. Co. v. Agency Rent-A-Car, Inc., 716 A.2d 810, 814 (Vt. 1998) (financial responsibility statute creates an insurance relationship between self-insured and permissive user/tortfeasor); Hillegass v. Landwehr, 499 N.W.2d 652, 656 (Wis. 1993) (held that self-insurance was "other collectible insurance" within the meaning of permissive user's automobile insurance policy because self-insured status made self-insured an omnibus insurer for the negligence of permissive users of the self-insured's vehicle).

[9] See, e.g., Amer. Family Mut. Ins. Co., 517 S.W.2d at 113-14 (state financial responsibility act which obligated a self-insurer to "pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer" did not require self-insurer to indemnify a permissive user against loss and did not deprive

11

sibility Act does not render the self-insurer an insurer of a permissive user and no such battle of "other insurance" claims is presented where the permissive user was operating a self-insured vehicle. The self-insurer has no obligation to a permissive user to accept the risk of liability comparable to the obligation imposed by an insurance policy. The antisubrogation rule therefore does not prohibit the self-insurer from seeking indemnification from a negligent permissive user under tort law.

B. *Agency and Employment Principles*

NIPSCO's contention that self-insurers are not the substantial equivalent of insurance carriers and permissive users are not their "insureds" is correct insofar as the Financial Responsibility Act is concerned. The antisubrogation rule therefore does not bar self-insurers from claiming an indemnity right against permissive users. Similarly, NIPSCO has no duty as a self-insurer to indemnify and defend a permissive user of its vehicle. We now consider whether the employment relationship changes these results as to Zurbrick. Both NIPSCO and Zurbrick wear two hats in this litigation. NIPSCO is a self-insurer and an employer, and Zurbrick was a permissive user and an employee. Employment creates a species of agency relationship. Restatement (Second) of Agency § 2 cmt. a (1958). The employee owes fiduciary duties to the employer. Id. at § 1. The employer also owes special duties to the employee. Among these is a duty of disclosure. This duty is derived from the employment relationship and can be varied by agreement. Id. at §§ Ch. 14 introductory note; 435; 510.[10] Section 435 of the Restatement (Second) of Agency provides:

> Duty to Give Agent Information
> Unless otherwise agreed, it is inferred that a principal contracts to use care to inform the agent of risks of physical harm or pecuniary loss which, as the principal has reason to know, exist in the performance of authorized acts and which he has reason to know are unknown to the agent. His duty to give other information depends upon the agreement between them.

---

the self-insured employer of his right to seek reimbursement from the negligent employee driver under tort law indemnification principles).

[10] The Restatement describes the employer's duty of disclosure in two places: in section 435 the duty is phrased in terms of "principals" and "agents" and in section 510 it is phrased in terms of "masters" and "servants." The commentary to section 435 explains that section 510 is merely a more specific application of the principle announced in section 435 and that the two sections state the same substantive rule. Id. at § 435 cmt. a. Accordingly, we do not recite both sections here.

While the duty to inform can be spelled out in an employment contract, it is more usually "inferred from the conduct of the parties in the light of the common understanding as to [the duty's] existence and extent." Id. at Ch. 14, introductory note. The employer has a duty to disclose facts which, if unknown, would be likely to subject the agent to pecuniary loss. Id. at § 435 cmt. a. The facts which must be disclosed include specific risks known to the employer but unlikely to be discovered by the employee. Id. at § 510 cmt. a. The commentary provides as an example that a principal who employs an agent to sell goods which appear to be but are not sound is subject to liability to the agent if the agent is led to incur personal liability to a buyer through misstatements of the condition of the goods. Id. at § 435 cmt. a. See also S. Central Bank & Trust Co. v. Citicorp Credit Serv., Inc., 811 F. Supp. 348, 352 (N.D. Ill. 1992) (An agent was hired to solicit customers to purchase the principal's services in processing bankcard credit charges. The court held that the agent stated a cognizable claim that the principal breached its duty of disclosure under section 435 by failing to disclose a customer's financial collapse after the principal became aware of the customer's financial condition.); Marie Deonier & Assoc. v. Paul Revere Life Ins. Co., 9 P.3d 622, 629 (Mont. 2000), aff'd in part & rev'd in part, 101 P.3d 742 (2004) (applying section 435 of the Restatement, the court held that an insurance company had a duty to inform its agent of a known risk of litigation arising from the policy she sold on behalf of the company).

The principal's obligation to disclose to the agent typically arises in the context of liabilities incurred by the agent in the course of dealing for the principal. In this case, if the accident occurred in the course of Zurbrick's employment NIPSCO will presumably be liable under respondeat superior, will pay the judgment out of NIPSCO's excess insurance, and will not be barred by the antisubrogation rule from seeking indemnification from Zurbrick. Similarly, if Zurbrick was merely a permissive user at the time of the accident, the antisubrogation rule would not prevent NIPSCO from seeking reimbursement from Zurbrick for NIPSCO's statutory damages. However, we think the employer forfeits its reimbursement rights if these liability risks are not disclosed to the employee. In the present case, the duty of disclosure arises because NIPSCO supplied the vehicle for use in employment and also for personal use and Zurbrick accepted it on

13

those terms as part of his employment, apparently without exploring the desirability of additional insurance.[11]

NIPSCO knew that the vehicles it supplied to its employees were not covered by contractual insurance but instead were self-insured under the Financial Responsibility Act which has a liability limit substantially below the potential exposure for an accident involving personal injury. NIPSCO elected to become self-insured. Presumably only (or at least mostly) sophisticated entities undertake to self-insure. It is therefore appropriate to place on them the burden of proving that they have explained the risks their employees assume when accepting and using the company vehicles. There is nothing in the record indicating whether NIPSCO informed its employee drivers, including Zurbrick, of this exposure. If it did not, NIPSCO's lack of contractual coverage was "likely to subject Zurbrick to pecuniary loss" and NIPSCO's silence constituted a breach of duty.

A breach of the duty of disclosure ordinarily gives rise to actions in tort and contract against the employer. Restatement (Second) of Agency § 435 cmt. a. We conclude that breach also gives rise to a duty to indemnify the employee for any loss attributable to the breach. Sections 438 and 439 of the Restatement enumerate several situations, none of which are applicable here, where a principal has a duty to indemnify an agent. Section 438(2)(b) also provides that where the parties do not have an employment agreement to the contrary, a principal has a duty to indemnify an agent where the agent "suffers a loss which, because of their [agency] relation, it is fair that the principal should bear."

This record does not reveal whether there was disclosure of NIPSCO's potential causes of action against Zurbrick for reimbursement arising out of negligent use of the vehicle or disclosure of the risk of liability to third parties above minimum statutory requirements. Nor is it clear whether there was any implicit or explicit agreement as to these risks. We conclude that basic fairness would require NIPSCO to indemnify Zurbrick's Estate against liability arising out of Zurbrick's use of NIPSCO's vehicle if there was no disclosure of these risks. This duty includes

---

[11] Zurbrick's own automobile liability policy excluded coverage of vehicles owned by others and "regularly used" by Zurbrick, and also excluded business vehicles. Zurbrick's insurer denied coverage on the basis that one of these exclusions applied whether Zurbrick was or was not in the scope of employment. That denial of coverage is not challenged here.

reimbursement for any amount the Estate is ultimately required to pay Minniefield. Id. at § 435 cmt. b. In addition, a breach of the duty of disclosure would require NIPSCO to defend the Estate. We remand to the trial court for further proceedings, including any motion either party may desire to make based on the presence or absence of any proof that NIPSCO made appropriate disclosure and or secured an agreement from Zurbrick as to these risks.

## Conclusion

The order of the trial court that is the subject of this interlocutory appeal is vacated. This case is remanded for further proceedings consistent with this opinion.

Shepard, C.J., Sullivan and Rucker, J.J. concur.

Dickson, J., concurs with separate opinion.

**Dickson, Justice, concurring.**

I agree with the Court's conclusion that the present language of the Indiana Financial Responsibility Act does not "make a self-insurer a quasi-insurance carrier and require it to indemnify a permissive user," slip opin. at 9, and that permissive users are not the "insureds" of self-insurers, slip opin. at 12. As a result of today's opinion, it is reasonable to anticipate that self-insured employers providing vehicles for use by an employee or an employee's designee will likely issue advisements including warnings of the minimum coverage limits provided by self-insured employers and the risks of a permissive user's personal liability to indemnify or reimburse any liability payments made by the self-insurer to persons injured by the negligence of the permissive user. Thus understood and applied, however, the statute may present substantial issues that invite legislative attention, or, if none, common law response.

Principal among these issues is whether, and to what extent, the personal automobile liability insurance of an employee-permissive user provides coverage for damages to injured third parties and for such permissive user's obligation to indemnify or reimburse a self-insured for payments made to the third party. There are various aspects to these issues.

Conventional policy language requires a liability insurance company to pay only damages for which the insured becomes legally responsible because of an auto accident, and disclaims any duty to pay for bodily injury or property damage not covered under the policy. Today's opinion does not explore whether an employee-permissive user's liability to a self-insured employer falls within the "because of an auto accident" restriction so as to qualify for coverage under the employee's personal policy. Likewise, our decision does not address whether a direct full payment of a third party's claim by a self-insured vehicle owner thereby terminates any obligation under the permissive user's standard personal liability insurance coverage, particularly as to such user's obligation to indemnify or reimburse the self-insured employer. And, if the coverage provided by standard policies does not extend to such liability for indemnification or reimbursement, our opinion does not consider whether such coverage is commercially available as an additional endorsement to the personal policies of employees using vehicles provided by a self-insured, or as a separate policy for employee-permissive users who do not own a private vehicle.

16

Another unresolved issue is the effect of "other insurance" provisions usually contained in the personal automobile liability policies that employee-permissive users would obtain for their own vehicles. Such provisions typically declare the provided coverage to be excess to other collectible insurance or otherwise exclude or limit coverage if there is other applicable liability insurance. But today's opinion declares that self-insureds are not insurance carriers for permissive users and such users are not insureds of their self-insured employers. Thus a possible future question is whether the limits or exclusions provided by "other insurance" clauses are triggered when an employee-permissive user injures a third-party while operating a vehicle owned by a self-insured, whose statutory obligations to the third party we have declared not to be insurance. If payments made by self-insured entities do not qualify under "other insurance" clauses, questions arise whether an employee-permissive user's personal automobile liability insurance company must bear the full burden of damages to a third party if the self-insured entity declines to make payment, and whether the self-insured entity has any obligation to pay damages to a third party that may exceed the limits of coverage provided by the permissive-user's personal liability insurance. In other words, there appears to be a significant question whether today's decision will operate to eliminate any practical likelihood that a self-insured entity will ever have to pay for damages to a third party injured by the negligence of permissive user in the absence of respondeat superior liability.

I am also concerned about other potential ramifications regarding insurance coverage for non-employees (for example, employee spouses) who injure third parties while driving, with permission, a vehicle owned by a self-insured entity. Sound public policy seeks to assure that persons injured by the negligent driving of others will have recourse to recover damages at least to the extent of minimum statutory limits. For all of these, and likely other, related challenges, the present self-insurance provisions in the Indiana Financial Responsibility Act invite careful attention.